José González Cádiz, Plaintiff and Appellee, v. Vicente Ortiz López et al., Defendants, and The People of Puerto Rico, Appellant.

Nos. 6399 and 6400. Argued December 6, 1934.—Decided December 24, 1934.

*Benjamín J. Horton, Attorney General, and R. Cordovés Arana, Assistant Attorney General,* for appellant. *González Fagundo & González Jr.* for appellee.

Mr. Justice Córdova Dávila delivered the opinion of the Court.

Vicente Ortiz López and his wife bought a house from Santiago and José González Cádiz for $7,500 part of which was paid in cash and the balance by a mortgage on the immovable for three years in favor of José González Cádiz to become due on March 1, 1929. This mortgage was recorded in the registry of property of Humacao.

The People of Puerto Rico attached the said house for the payment of taxes due by Vicente Ortiz López, said attachment having been recorded in the registry of property on November 13, 1931, as appears from a certificate of purchase issued on March 15, 1932, by the collector of internal revenue. This officer certified that after compliance with the legal requisites the property was awarded to The People of Puerto Rico on January 26 of the same year in a distraint proceeding for the payment of income tax for the year 1924 due by Vicente Ortiz López.

It is further stated in the said certificate that the sale of the immovable in question was advertised in the newspapers of the 10th, 11th, 17th, 18th, 24th and 25th of February at first public auction; of the 19th, 20th, 26th and 27th of October and 2nd and 3rd of November, 1931, at second public auction; and of the 4th, 5th, 11th, 12th, 17th and 19th of January, 1932, at third public auction; that notice had been served on Vicente Ortiz López as the owner of the house and on José González Cádiz as the mortgagee, of the award made to The People of Puerto Rico so that they might exercise the right of redemption as provided by Section 352 of the Political Code. The sale to The People of Puerto Rico was recorded in the registry of property in December, 1932.

On October 3rd of the same year José González Cádiz brought summary foreclosure proceedings in the District Court of Humacao for the recovery of his mortgage credit and filed a certificate from the registry of property in which it was stated that the mortgage had not been canceled nor was any cancellation thereof pending and that there was no

other lien upon the property prior or subsequent to the said mortgage, and that the same was at that time recorded in the name of Vicente Ortiz López, married to Paula Ortiz. Pursuant to the above proceeding the house was sold at public auction and awarded to José González Cádiz, the mortgagee.

A judicial sale deed was executed by the marshal on January 12, 1933, and as the house had been recorded in the name of The People of Puerto Rico on December 8, 1932, the execution creditor filed a motion in the court in which he alleged that during the pendency of the summary foreclosure proceeding The People of Puerto Rico had recorded its purchase of the estate mortgaged in the registry of property of Humacao by means of a certificate to that effect and that at the time the mortgage was executed there had been no public notice of taxes due on the property mortgaged or of taxes due by the defendants upon the said property or by reason of income taxes or otherwise, and that the mover had not been advised of the said sale to The People of Puerto Rico until the precise moment of presenting for record in the registry the deed of judicial sale executed in his favor by the marshal.

Relying on the above allegations the execution creditor moved the court to order that, pursuant to the provisions of article 71 of the Mortgage Law, notice be served on The People of Puerto Rico, which appeared of record as the owner of the property publicly sold; to proceed, if it thought proper, to release the property after receiving the amounts secured by the property, with the warning that if it failed to do as requested, the record of its ownership in the registry of property would be canceled. An order was issued accordingly and, after a hearing on a motion of The People of Puerto Rico to set aside said order, the court maintained its order on the ground that the administrative distraint proceeding and the sale of the mortgaged property was clearly

an *ultra vires* act and fully invalid because the said proceeding had been instituted five years after filing, or the failure to file, the return.

The People of Puerto Rico alleged in its motion for nullity (*a*) that the property in question had been awarded to it ever since January 26, 1932, and it acquired full ownership thereof as from March 15, 1933, because no right of redemption had been exercised; (*b*) that when papers were first filed in the summary foreclosure proceeding, the record of an attachment upon the said property appeared from the registry in favor of The People of Puerto Rico, which had not been served with a copy of the demand for payment as a subsequent creditor; (*c*) that when the summary foreclosure proceeding was commenced it owned the property, which fact was known to the mortgagee ever since March 15, 1932, and therefore all the processes in the said proceeding should have been served on The People of Puerto Rico as the party subrogated to the rights of the mortgagor, Vicente Ortiz López; and (*d*) that as the taxes due constitute a lien with priority over the mortgage credit and as The People of Puerto Rico had acquired the property almost a year before the commencement of the foreclosure proceeding, The People of Puerto Rico was not a purchaser *pendente lite* but a third possessor under the provisions of the Mortgage Law and was not controlled by the provisions of article 71 of said Mortgage Law. The lower court, on motion of José González Cádiz, and notwithstanding the appeal from its order enjoining The People of Puerto Rico to release the property upon payment of the amounts stated in the writ, with the warning that the record of its ownership would be cancelled if it failed to do so, ordered that the record of the ownership title in favor of The People of Puerto Rico be canceled.

The first three errors assigned as having been committed by the lower court are as follows:

"1. The District Court erred in holding that the appellant was. a purchaser *pendente lite* and, therefore, subject to the obligations. imposed upon such purchasers by article 71 of the Mortgage Law.

"2. The District Court erred by applying to the instant case the provisions of article 71 of the Mortgage Law.

"3. The order of the District Court of February 28, 1933, and its ruling upholding the said order, the latter dated April 29, 1933, are contrary to law and to the facts."

██ According to article 71 of the Mortgage Law, real property or rights against which cautionary notices have been entered may be alienated or encumbered, but without prejudice to the right of the person in whose name the cautionary notice was entered. If the real property or rights against which cautionary notices have been entered should be awarded to a plaintiff under judgment rendered in an action brought by him, or if it should become necessary to advertise them for sale at auction, any person who should have acquired such property or rights during the litigation shall be notified of the award or advertisement. After service of the notice the person notified may release the property in question upon payment of the amount mentioned in the entry, as principal and costs. Should he fail to do so within ten days, the record of his ownership shall be canceled in the registry, as well as any other records which may have been made after entry of the cautionary notice, to which and the proper order shall be issued to the registrar of property. This court has held that where property mortgaged is alienated or encumbered during the pendency of the summary foreclosure proceedings, article 71 of the Mortgage Law is applicable. This question was widely discussed by this court in its opinion delivered by Mr. Justice Texidor in *Arroyo* v. *Zavala,* 40 P.R.R. 257. In the above case Angel Arroyo brought in the District Court of San Juan summary foreclosure proceedings against Gabriel Zavala to recover the sum of $679.46, interest thereon and costs. Demand for payment was issued and served on the mortgagor who failed to

pay, whereupon judgment was rendered directing the sale of the property mortgaged at public auction. The sale took place and the property was awarded to the execution creditor. During the term for the demand which was served on November 16, 1927, the mortgagor conveyed the property mortgaged to Petrona Cruz de Jacobs by deed dated December 13, 1927. The execution creditor does not seem to have had any knowledge of such deed of sale. He learned of the existence of the deed after the public sale, but before the marshal had executed to him any conveyance or given him possession of the property. He moved the court to notify and warn Petrona Cruz that if within a period of ten days she did not pay the amount of the mortgage and release the property, the cancellation of the record of the sale in her favor would be ordered. The motion was granted accordingly, the said purchaser was notified and, after more than thirty days had elapsed without her making the payment, the execution creditor applied for and obtained an order and writ of cancellation. Subsequently the court set aside the order of cancellation and the execution creditor appealed. In the above case the court expressed itself as follows:

"If we consider article 71 of the Mortgage Law, which in a similar situation grants the purchaser *pendente lite* the right to release the property, but with the warning that if he fails to do so within the specified time the record of his ownership shall be canceled in the registry; if we bear in mind that Section 2 of the Act relating to judgments and the manner of satisfying them (Comp. 1911, Section 5296) provides that the order foreclosing a mortgage 'shall have all the force and effect of a writ of possession, as between the parties to such suit of foreclosure or any person claiming under the defendant in such suit by any right acquired pending such suit;' and, finally, if we remember that Section 36 of the Code of Civil Procedure empowers a court or judge to adopt any process or method of procedure that is suitable for the purpose of enforcing law, we are bound to arrive at the conclusion that to meet the situation by applying a procedure similar to that prescribed in article 71 of the Mortgage Law, that is, by serving notice on the purchaser and ordering the

cancellation of his record in the registry should he fail to release the property within ten days, is a legal and equitable method of procedure.''

Counsel for The People of Puerto Rico state that the court in the case cited confines itself solely and exclusively to the case of a purchaser *pendente lite,* and maintain that it can not be otherwise, since article 71 refers to the conveying or encumbering of recorded real property or rights. According to said counsel the appellee herein can not avail himself of the remedy provided for in the article referred to, because it has been fully shown that the appellant is not a purchaser *pendente lite,* since it acquired the property before the summary foreclosure proceeding had been instituted and that the mortgagee learned, prior to that time, that the property had been awarded to The People of Puerto Rico.

It appears from the record that the initial writing in the summary proceeding was filed on October 3, 1932, and that the public auction took place on January 12, 1933, the mortgaged house having been awarded to the creditor. The People of Puerto Rico acquired the property on January 26, 1932, a certificate of purchase being issued by the collector of internal revenue on March 15 of the same year. It can not be urged that the appellant acquired the property during the pendency of the summary foreclosure proceeding and it is obvious that the appellee does not come within the purview of article 71 of the Mortgage Law. The appellee contends that it has not been shown that the property was awarded at public auction to The People of Puerto Rico prior to the filing of the foreclosure proceeding. It can not be doubted that this fact can easily be ascertained with absolute certainty by an inquiry from the registry of property. The registrar certified that the mortgage had not been canceled and that there was no further lien upon the property, and the collector of internal revenue asserts in the certificate of purchase that the attachment was entered on November 13, 1931. We have before us two certificates: one from the

registrar denying in general terms the existence of any lien or encumbrance, and another from the collector of internal revenue specifically stating that the attachment had been entered. A certificate from the registrar attached to the initial petition should include, where there are liens, a literal transcription thereof. It seems obvious that where there is none, it should be so stated. The certificate of purchase issued by the collector of internal revenue constitutes *prima facie* evidence of the facts stated therein, as expressly prescribed by law. But without stopping to consider the probatory value of the general denial or of the specific assertion of the above certificates as regards the attachment, there is a fact that has not been contradicted and this is the awarding of the property to The People of Puerto Rico and the notice thereof served on the mortgagee at least six months before the summary proceeding was commenced. The certificate of purchase, in which the above service of notice is made to appear, was issued in March, 1932, and the foreclosure proceeding was instituted in October of the same year. Some time afterwards, in December, the registrar recorded the property in the name of The People of Puerto Rico. The mortgagee had notice that the immovable had passed into the hands of a third possessor before the institution of the judicial proceedings for the recovery of his credit by foreclosure and this is why it is urged by the appellant that the judicial proceedings should have been directed against it, in accordance with article 129 of the Mortgage Law. There is no doubt as to the date of the acquisition of the estate by The People of Puerto Rico. The validity of its title is not a question to be discussed within the proceeding provided for in article 71 under consideration. It clearly appears from the facts that the appellant did not acquire the estate during the pendency of the summary proceeding, and this ground alone, without any others, would warrant a reversal of the decisions of the lower court, since it acted without justification in issuing the orders to serve notice and to di-

rect the cancellation in the registry of the record of the immovable in the name of the appellant. We very much question that the article in question could be applied to The People of Puerto Rico even if it had acquired the estate after the commencement of summary proceeding. As it is unnecessary to pass upon this question, we will not at this time give our opinion thereon.

It is further claimed that the trial court erred in holding that the right of The People of Puerto Rico to collect the taxes had prescribed, and that the attachment and sale of the estate for the payment of said taxes was an *ultra vires* act, and legally invalid. It is urged that the lower court has no power to quash, in an ancillary proceeding instituted pursuant to article 71 of the Mortgage Law, indirectly, *motu proprio,* and without hearing The People of Puerto Rico, the administrative proceeding for the collection of taxes brought against Vicente Ortiz López. It is further urged that neither could the lower court *ex officio* raise, in behalf of the mortgagee, the question of prescription.

It is unnecessary to stop to discuss the questions raised because, as the first three assignments have been decided in favor of the appellant, a reversal of the orders appealed from necessarily ensues. We think, however, that under the provisions of article 71 of the Mortgage Law questions of this nature can not be raised or discussed. Questions such as these should rather be considered and decided in a declaratory action.

In the final part of its brief the appellant challenges the jurisdiction of the lower court to act in the premises, because The People of Puerto Rico did not give its consent to be sued in such ancillary proceeding. We do not think it necessary either to decide this question, which is nevertheless interesting, because, as stated above, the lower court had no power to issue the order appealed from and cancel the record of ownership in favor of The People of Puerto Rico.

For the foregoing reasons the decisions of February 28 and April 29, 1933, are reversed, and the order directing the cancellation of the record in the registry of property is set aside, and the said record shall be reinstated in the registry by means of an order to be issued by the lower court.